UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IDALBERTO INFANTE and JAMES WHITE,

               Plaintiff,

vs.                         Case No.  2:12-cv-41-FtM-29UAM

SHERIFF STEVE WHIDDEN, in his
official capacity as the Sheriff of
Hendry County, DETECTIVE ALLEN
DAVIES, individually, RENE GARCIA,
SHEILA CORNELL, RENE J. GARCIA, JR.,
in their individual capacity,

               Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on three sets of motions to dismiss: (1) Defendants Rene Garcia, Sheila Cornell, and Rene Garcia Jr.'s Motion to Dismiss (Doc. #63), to which plaintiffs filed a Response (Doc. #68); (2) Defendant Sheriff Steve Whidden's Motion to Dismiss or in the Alternative Motion for a More Definite Statement (Doc. #65), to which plaintiffs filed a Response (Doc. #69), and with leave of Court defendant Sheriff Steve Whidden (the Sheriff) filed a Reply (Doc. #77) and plaintiffs filed a Sur-Reply (Doc. #79); and (3) Detective Allen Davies' Motion to Dismiss Second Amended Complaint, or in the Alternative, Dispositive Motion for Summary Judgment (Doc. #66), to which plaintiffs filed a Response (Doc. #75). Various other housekeeping motions will also be addressed which relate to one or more of the motions to dismiss.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th

Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

As discussed below, the Court declines to consider Detective Davies's motion for summary judgment at this stage of the proceedings. Therefore, the summary judgment standard need not be discussed.

**II.**

On December 26, 2012, the Court issued an Opinion and Order (Doc. #50) granting or granting in part defendants' motions to dismiss without prejudice. More specifically, as relevant here, the Court quashed service of process as to Sheriff Whidden but declined to address the other issues and granted additional time to perfect service of process. (<u>Id.</u>, pp. 5-7, § III.) The Court also dismissed the two counts alleged against Rene Garcia (Garcia), Rene J. Garcia Jr. (Garcia Jr.) and Sheila Cornell (Cornell) because legal cause and malice were insufficiently pled to support a claim of malicious prosecution and the claim of abuse of process was voluntarily withdrawn. (<u>Id.</u>, pp. 14-17, § V.) On January 10, 2013, plaintiffs filed a Second Amended Complaint (Doc. #60), which is now the operative pleading.

At this stage of the proceedings, the Court takes all the factual allegations in the Second Amended Complaint as true. Plaintiffs Idalberto Infante (Infante) and James White (White)(collectively plaintiffs) are licensed by the State of Florida as surety agents. (Id., ¶ 5.) After conducting an investigation and surveillance of the wife of Jorge Manso, a fugitive who had secured a bond with plaintiffs and subsequently failed to appear, they were led to believe that Manso could be at the residence of defendants Garcia and Cornell. Manso's RV was parked on their property, Manso's wife had visited the house, the address was listed on the application for bond, and witnesses had seen Manso in the area. (Id., ¶ 13.) Plaintiffs stopped at a Shell gas station in Hendry County to organize their team before attempting to seize Manso from the residence of defendants Garcia and Cornell. (Id., ¶ 14.) At the gas station, plaintiffs encountered two Hendry County Sheriff's Office deputies and fully disclosed their intent and the location of the planned seizure. (Id., ¶ 15.) Plaintiffs were wearing black tactical gear, with shirts proclaiming "Surety Agent" in day/night glow letters on the sleeves and body, as well as identifying badges. (Id., 16.) The deputies notified dispatch of plaintiff's intent and presence in Hendry County, plaintiffs were given permission to proceed, but the deputies declined an invitation to accompany plaintiffs. (Id., ¶ 15.)

On May 5, 2009, plaintiffs, with the assistance of fellow surety agents and while armed, went to the residence of defendants Garcia and Cornell to secure Manso. (Id., ¶¶ 12, 17.) Upon arrival, plaintiffs secured entry by cutting the lock on the gate and surrounding the residence. Plaintiff White knocked on the front door and announced by "shouting" "surety agents". (Id., ¶ 17.) Defendant Cornell opened the door, was shown the bond paperwork, and was provided an opportunity to verify plaintiff White's credentials by calling the local Sheriff's office or police department. She declined to do so and granted permission to enter the residence. Plaintiff Infante also entered to translate for defendant Garcia and a third surety agent entered to secure a gun cabinet at the residence. (Id., ¶ 18.) When shown a picture, defendant Cornell initially denied knowing Manso, but recanted. Plaintiffs did not locate Manso after a room by room search. (Id., ¶ 19.) Defendants Garcia and Garcia Jr. then gave permission to search all containers located in the porch area, but Manso was not located. Plaintiffs also searched the RV located on the neighbor's property, which had been bought by the neighbor. (Id., ¶ 21.) Upon leaving the residence, plaintiffs provided their business card, gave Garcia and Cornell a printout regarding Manso, and indicated that they would be paid in exchange for information if they knew of Manso's whereabouts. Defendants Cornell and Garcia expressed no knowledge of Manso's location. (Id., ¶ 22.)

The next morning, on May 6, 2009, defendant Cornell called plaintiff White seeking payment for the damage to her property and a copy of Manso's bond application. She was referred to plaintiff Infante as lead agent for both requests, who denied the requests and denied liability for damage, which angered defendant Cornell. (Id., ¶¶ 24, 25.) After talking to plaintiffs, defendant Cornell contacted Hendry County Sheriff's Office. (Id., ¶ 26.) A deputy declined to file a report but directed defendant Cornell to call back later to talk to the sergeant on duty. When defendant Cornell called back, she contacted Detective Davies who went to the residence and filed a report after hearing from Garcia, Garcia Jr. and Cornell that plaintiffs had represented themselves to be police officers. (Id., ¶¶ 27, 28.) The following day, on May 7, 2009, defendants Garcia and Cornell pressed charges against plaintiffs. (Id., ¶ 29.)

A month later, on June 8, 2009, Detective Davies obtained an arrest warrant based upon his affidavit and the false reports of defendants Garcia and Cornell. Detective Davies fabricated the affidavit, designated plaintiff White as a convicted felon, falsely stated that plaintiffs were unlicensed, and contrived witness testimony. (Id., ¶ 32.)

On June 10, 2009, plaintiffs surrendered themselves in Monroe County based upon the Hendry County arrest warrant. (Id., ¶¶ 9, 30, 33.) Plaintiffs were charged with aggravated assault with a

deadly weapon, criminal mischief for over $200, first degree armed burglary, and impersonating an officer.  (Id., ¶ 10.)  Defendants Garcia, Cornell and Garcia Jr. continued their false account by giving false depositions and false testimony during the criminal proceedings.  (Id., ¶ 34.)  On May 20, 2010, plaintiffs were both found not guilty on all charges.  (Id., ¶ 11.)

### III.

The Second Amended Complaint alleges the following claims. Count I alleges a violation of 42 U.S.C. § 1983 against Detective Davies in his individual capacity for violation of the Fourth Amendment.  Count II alleges a violation of § 1983 against Sheriff Whidden in his official capacity.  Count III alleges a claim under Fla. Stat. § 768.28 against Sheriff Whidden in his official capacity for negligent hiring, training, supervision, control, and retention.  Count IV alleges a claim under Fla. Stat. § 768.28 against Sheriff Whidden in his official capacity and Detective Davies in his individual capacity for false imprisonment/false arrest.  Count V alleges a claim under Fla. Stat. § 768.28 against Sheriff Whidden in his official capacity and Detective Davies in his individual capacity for malicious prosecution.  Count VI alleges a claim of malicious prosecution against Garcia, Garcia Jr. and Cornell.

**A. Claims Against Sheriff Whidden**

Sheriff Whidden seeks dismissal of the Second Amended Complaint for various reasons, or in the alternative, a more definite statement. The Court rejects the Sheriff's argument that the Second Amended Complaint is still a shotgun pleading. (See Doc. #50, p. 7, § IV.A.) The Court also rejects the Sheriff's argument that the various pleading deficiencies result in the lack of subject matter jurisdiction. Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 891 (11th Cir. 2013)(quoting Bell v. Hood, 327 U.S. 678, 682 (1946)("Jurisdiction. . .is not defeated. . .by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.")). The other issues are discussed below.

**(1) State Law Claims: Counts III, IV, and V**

Sheriff Whidden in his official capacity is named in three counts alleging state law claims under Fla. Stat. § 768.28. Count III alleges a claim for negligent hiring, training, supervision, control, and retention; Count IV alleges a claim for false imprisonment/false arrest; and Count V alleges a claim for malicious prosecution. The Sheriff argues that plaintiffs have failed to comply with mandatory conditions precedent under Fla. Stat. § 768.28(6), and therefore Counts III through V must be dismissed. Specifically, the Sheriff argues that plaintiffs' notice letters were addressed and delivered to the "Hendry County

Sheriff's Office," not the appropriate "agency head," i.e. Sheriff Whidden, and stated an intent to file a tort claim for money damages against the "Hendry County Sheriff's Office," not the sheriff in his official capacity. Additionally, the Sheriff asserts that dismissal is required because the Department of Financial Services was never sent/served with notice prior to the filing of the Complaint, and that the deficiency cannot now be cured since more than 3 years have passed since the claims accrued.

### (a) General Principles

"A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." Stephens v. Geoghegan, 702 So. 2d 517, 527 (Fla. 2d DCA 1997)(citations omitted). Florida has waived its sovereign immunity for tort liability under certain circumstances. "In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." Fla. Stat. § 768.28(1). Under this Act,

> [a]ctions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

Fla. Stat. § 768.28(1). Among the limitations specified in the Act is a notice requirement prior to filing such an action.

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; ....

Fla. Stat. § 768.28(6)(a). "[T]he requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues." Id. at (6)(b).

"[T]he purpose of the notice requirement is to provide the State and its agencies sufficient notice of claims filed against them and time to investigate and respond to those claims." Cunningham v. State Dep't of Children & Families, 782 So. 2d 913, 915 (Fla. 1st DCA 2001)(citing Metro. Dade Cnty. v. Reyes, 688 So. 2d 311, 313 (Fla. 1996)). The notice provision of § 768.28(6)(a) "is strictly construed, with strict compliance being required." Maynard v. State, Dep't of Corr., 864 So. 2d 1232, 1234 (Fla. 1st DCA 2004). Although notice is statutorily required, the form of the notice is not specified. LaRiviere v. S. Broward Hosp. Dist., 889 So. 2d 972, 974 (Fla. 4th DCA 2004). Rather, the notice required by the statute "must be sufficiently direct and specific

to reasonably put the department on notice of the existence of the claim and demand." Id. This notice must be written and must "sufficiently describe[ ] or identif[y] the occurrence so that the agency may investigate it[.]" Id. (quoting Franklin v. Palm Beach Cnty., 534 So. 2d 828, 830 (Fla. 4th DCA 1988)).

**(b) Notice to Sheriff**

The Second Amended Complaint attached two letters from plaintiffs' counsel dated February 25, 2011, sent to the "Hendry County Sheriff's Office" and addressed "To Whom It May Concern". (Doc. #60-1, Exh. A.) Each letter identified one of the plaintiffs and stated that he intended to bring a tort action against "the Hendry County Sheriff's Office." (Id.) The Sheriff argues that these notices were insufficient because they were not addressed and delivered to him as the head of the agency, and did not advise of the intent to file a claim against him in his official capacity. The Court finds the Sheriff's arguments to be without merit.

Since the statutory notice requirement to the agency is a condition precedent to filing an action, Fla. Stat. § 768.28(6)(b), a plaintiff need only "allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The Second Amended Complaint alleges that "[a]ll conditions precedent for asserting the state law tort claims have been complied with pursuant to Fla. Stat. § 768.28. Please see attached Exhibit A." (Doc. #60, ¶ 3). This fully complies with plaintiffs'

pleading requirement, and is normally sufficient to survive a motion to dismiss.

In determining a motion to dismiss, a court is usually required to accept the facts set forth in a complaint as true, and to limit its consideration to those facts contained in the pleadings and the attached exhibits. <u>Leslie v. Hancock County Bd. of Educ.</u>, 720 F.3d 1338, 1343-44 (11th Cir. 2013)(citing <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1199 (11th Cir. 2007)). However, "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." <u>Irvin</u>, 496 F.3d at 1205-06 (citations omitted). Because plaintiffs attach their notice letters as exhibits to the Second Amended Complaint, the Court may consider them in determining the accuracy of the general allegation that the notice requirement was satisfied.

The condition precedent set forth in Fla. Stat. § 768.28(6)(a) requires that claimant "presents" "the claim in writing to the appropriate agency". The notice letters attached to the Second Amended Complaint establish that plaintiffs "presented" the claim in writing to the appropriate agency, i.e., the Hendry County Sheriff's Office. There is no statutory requirement that the notice be addressed to the agency head, only that it be presented

to the "appropriate agency."  This does not require formal service of process, which is only required to be made on the head of the agency if and when an "action" is brought.  Fla. Stat. § 768.27(7).  As stated in <u>Aitcheson</u>, "the notice requirement of section 768.28(6)(a) only requires notice be given 'to the appropriate agency.'  Although service of *process* is required to be made on the head of the agency, there is no requirement to serve an agency head with the written notice requirement.  <u>Compare</u> § 768.28(7) <u>with</u> § 768.28(6)(a)."  <u>Aitcheson v. Fla. Dep't of Highway Safety & Motor Vehicles</u>, 117 So. 3d 854, 857 (Fla. 4th DCA 2013)(emphasis in original).  The Second Amended Complaint, including Exhibit A, adequately pleads compliance with the statutory notice requirement, and the motion to dismiss Counts III, IV, and V on this ground is denied.

**(c) Notice to Department of Financial Services**

The Sheriff also argues that the three counts against him under Fla. Stat. § 768.28 must be dismissed because proper notice was never given to the Department of Financial Services, and this failure cannot now be cured.  This issue would normally be summarily rejected because, as discussed above, the Second Amended Complaint generally pleads compliance with all conditions precedent.  Nonetheless, plaintiffs' Response to the motion to dismiss attaches copies of the letters sent to the Department of Financial Services on February 1, 2013, as establishing the notice

given to the Department of Financial Services. (Doc. #69-1, Exh. B). "Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto, a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim." Starship Enters. of Atlanta, Inc. v. Coweta County, Ga., 708 F.3d 1243, 1253 n.13 (11th Cir. 2013)(quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (citation omitted)). The Court will similarly consider the notice letters attached to plaintiffs' response to the motion to dismiss because compliance with the statutory notice is referred to in the Second Amended Complaint, and their authenticity is not challenged. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)(citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

It is undisputed that the only notice presented to the Department of Financial Services were the letters dated February 1, 2013. The issue is whether plaintiffs provided this notice to the Department of Financial Services within three years after their claims accrued, as required by Fla. Stat. § 768.28(6)(a).[1] In

---

[1]If so, the prior notice deficiency may be cured. E.g., Villa Maria Nursing & Rehab. Ctr., Inc. v. South Broward Hosp. Dist., 8 So. 3d 1167, 1171-72 (Fla. 4th DCA 2009); Hattaway v. McMillian, 903 F.2d 1440, 1445-49 (11th Cir. 1990).

Florida, "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).

> This means that "a cause of action cannot be said to have accrued, within the meaning of the statute of limitations, until an action may be brought." State Farm Mut. Auto. Ins. Co. v. Lee, 678 So. 2d 818, 821 (Fla. 1996). In deciding when the notice-clock began to run on Rowe's state law claims, the question is when the last element of each claim occurred, or, to use the language of Lee, when the action first could have been brought.

Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1286 (11th Cir. 2002).  Each of the three claims must be examined separately.

### (i) Negligent Hiring, Training, Supervision, Control, and Retention

In the context of a claim for negligent hiring, training, supervision, control, and retention by a state attorney, the claim does not accrue until the criminal defendant is found not guilty and released.  Rowe, 279 F.3d at 1286-87 (analogizing the claim to one of legal malpractice).  Here, the negligent hiring, training, etc. relates to an allegedly false arrest.  None of the parties have cited binding precedent concerning when such a claim accrues in the context of a false arrest.  Analogizing to a false arrest claim, this cause of action accrues upon the arrest.  See discussion below.

The Second Amended Complaint alleges that defendants were arrested on June 10, 2009, which is when the claim accrued.  Plaintiffs therefore had until June 10, 2012, to file their notice,

and the February 1, 2013, notice was untimely.  The Sheriff's motion to dismiss Count III on this ground is granted.

### (ii) False Imprisonment/False Arrest

"False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010).[2]  "The essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances."  Mathis, 24 So. 3d at 1289-90 (citations omitted).  A false imprisonment claim accrues on the date of arrest.  Diaz v. Metro-Dade Police Dep't, 557 So. 2d 608, 609 (Fla. 3d DCA 1990).

In this case, the Second Amended Complaint alleges that plaintiffs were arrested and released on June 10, 2009, when they surrendered to authorities.  (Doc. #60, ¶ 9.)  Therefore, the three year deadline expired on June 10, 2012, and the February 1, 2013

---

[2]As the Sheriff notes, other cases hold that false arrest and false imprisonment are the same cause of action.  (Doc. #65, p. 16.)  The Sheriff argues that the count therefore contains duplicative claims  that serve no real purpose, and should be dismissed.  (Id.)  Plaintiffs respond that they are asserting only one cause of action for false imprisonment.  (Doc. #69, p. 8 n.3.) Defendant's motion to dismiss on this basis is denied.

notice letters were untimely as to this count.  The Sheriff's motion to dismiss Count IV is granted on this ground.

### (iii) Malicious Prosecution

Plaintiff must plead and ultimately prove six elements in order to establish a claim for malicious prosecution.

> In order to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Alterra Healthcare Corp. v. Campbell, 78 So. 3d 595, 602 (Fla. 2d DCA 2011)(citations omitted).  A claim of malicious prosecution accrues when the prosecution ends favorably for the claimant.  Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007).

In this case, this cause of action accrued on May 20, 2010, the date plaintiffs were found not guilty by the jury.  Therefore, the three year deadline expired on May 20, 2013, and plaintiffs' February 1, 2013, notice to the Department of Financial Services is timely.  The Sheriff's motion to dismiss Count V on this basis is denied.

**(d) Waiver of Notice Requirement**

In their Sur-Reply, plaintiffs argue that the Sheriff waived notice to both himself and the Department of Financial Services. (Doc. #79.)  Florida law recognizes the possibility of waiver and estoppel of the notice requirements.  <u>Brown v. State, Dep't of Corr.</u>, 701 So. 2d 1211, 1213 (Fla. 1st DCA 2011).  As in <u>Brown</u>, plaintiffs have not made any allegations suggesting waiver or estoppel; rather, the Second Amended Complaint only alleges compliance with the conditions precedent.  Since Counts III and IV are being dismissed due to untimely notice, and plaintiffs may be able to sufficiently plead waiver or estoppel, plaintiffs will be allowed to file a third amended complaint.

**(e) Failure to State a Claim as to Malicious Prosecution**

The Sheriff also argues that the official capacity malicious prosecution claim must be dismissed because it is impossible for an entity to have acted with malice, one of the necessary elements, and that such a claim is barred by Fla. Stat. § 768.28(9)(a). (Doc. #65, p. 17.)  The cases cited by the Sheriff do not stand for the proposition that an entity cannot act with malice, but do stand for the proposition that Florida has not waived its sovereign immunity for such conduct.

"Malice is not only an essential element of malicious prosecution; it is the gist of such a cause of action."  <u>Sebring Utils. Comm'n v. Sicher</u>, 509 So.2d 968, 970 (Fla. 2d DCA

1987)(citing <u>Wilson v. O'Neal</u>, 118 So. 2d 101 (Fla. 1st DCA 1960)).

The pertinent portion of the Florida statute provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. 768.28(9)(a). Florida cases have found that §
768.28(9)(a) bars an action for malicious prosecution against the
state or its subdivisions arising from the malicious acts of their
employees. <u>Sebring</u>, 509 So. 2d at 970; <u>Coconut Creek v. Fowler</u>,
474 So. 2d 820 (Fla. 4th DCA 1985); <u>Hambley v. State, Dep't of
Natural Res.</u>, 459 So. 2d 408 (Fla. 1st DCA 1984); <u>Craven v. Metro.
Dade County</u>, 545 So. 2d 932, 933 (Fla. 3d DCA 1989); <u>Johnson v.</u>

-19-

<u>State Dep't of Health & Rehabilitative Servs.</u>, 695 So. 2d 927, 930 (Fla. 2d DCA 1997). Therefore, as a matter of law Count V fails to state a claim upon which relief may be granted as to the Sheriff in his official capacity, and is dismissed with prejudice.

**(2) Federal Claim: Count II**

In Count II plaintiffs allege a claim under 42 U.S.C. § 1983 against the Sheriff in his official capacity. The Sheriff argues that the conclusory allegations fail to show a policy or custom which was the moving force behind a constitutional violation; that the "formulaic conclusory allegations" sound in negligence, and therefore cannot support a § 1983 claim; and that the claim is based on a single incident, which is insufficient to establish the existence of a policy amounting to deliberate indifference. (Doc. #65, pp. 13-17.)

In Count II, plaintiffs allege that Sheriff Whidden is charged with implementing and promulgating official policies, rules, and regulations for employee and deputies of the Hendry County Sheriff's Office, including hiring, screening, training, supervising, controlling, disciplining, and assigning deputies, including training deputies to be capable of fully investigating circumstances to determine if probable cause is present. (Doc. #60, ¶¶ 43-44.) Plaintiffs allege that the Sheriff was deliberately indifferent in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise,

control and/or screen employees, including Detective Davies. (Id., ¶ 45.) This included a lack of training and/or skill by Detective Davies in investigating circumstances for the establishment of probable cause, and a lack of training or skill in drafting lawful arrest warrants and/or other characteristics making Detective Davies unfit to perform his duties. (Id.) Plaintiffs allege that the Sheriff, through his deliberate indifference, failed to ensure that deputies did not violate the constitutional and statutory rights of citizens while the deputies were acting under color of state law. (Id., ¶46.) Because of this failure to properly train, supervise, control or screen employees, plaintiffs assert they were unlawfully arrested based on an unlawful arrest warrant without any probable cause. (Id., ¶47.) Plaintiffs assert that this violated "the Constitutional rights of all persons, including the Plaintiffs" (id., ¶ 48), and resulted in plaintiffs false arrest and imprisonment (id., ¶ 49).

To establish a claim under § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived each plaintiff of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Plaintiffs also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc). A

governmental entity such as a Sheriff sued in his official capacity may not be held liable under a theory of *respondeat superior*, but instead may only be held liable when his "official policy" or custom causes a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiffs can establish the requisite "official policy" in one of two ways: (1) by identifying an officially promulgated policy, or (2) by identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. Grech v. Clayton County, Ga., 335 F.3d 1326, 1320-30 (11th Cir. 2003). Plaintiffs must identify the policy or custom which caused the injury so that liability will not be based upon an isolated incident, McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004)(citations omitted), and the policy or custom must be the moving force of the constitutional violation. Grech, 335 F.3d at 1330. See also Board of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). A failure to train will support liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiffs concede that the Sheriff's § 1983 liability cannot be premised on *respondeat superior* or negligence, but assert that Count II does not suffer from these defects. Plaintiffs rely

heavily on paragraph 45 of the Second Amended Complaint, but the Court concludes that paragraph 45 cannot support the weight placed upon it. Paragraph 45 is an overly lengthy sentence which ends up sounding more like a negligence claim than the claim explained in plaintiffs' response to the motion. It does not clearly state what constitutional right is involved, or what the Sheriff's policy was in regard to the pertinent constitutional right. It alleges there are "other characteristics making Detective Davies unfit to perform his duties," although there is no allegation that such unspecified shortcomings relate to any constitutional right. The motion to dismiss Count II is granted without prejudice.

**(3) Joint and Several Liability**

The parties argue about the reference to defendants being sued "jointly and severally" in the first paragraph of the Second Amended Complaint. The Court does not understand plaintiffs' explanation of the purpose of this phrase, and finds that it must be stricken because the liability on the various counts is not necessarily joint and several.

**B.  Claim Against Garcia, Garcia Jr., and Cornell: Count VI**

In Count VI, plaintiffs allege that defendants Garcia, Carcia Jr. and Cornell's actions in pressing charges against them constitutes malicious prosecution. (Doc. #60, ¶¶ 71, 72.) Plaintiffs allege that probable cause was not present, and defendants maliciously pursued the criminal proceedings in a

retaliatory manner. (Id., ¶¶ 74, 75.) Defendants argue that Count VI fails to allege the required elements of legal cause and malice, and therefore the claim of malicious prosecution cannot stand against them.

In a false arrest based malicious prosecution claim such as Count VI, there must be a lack of probable cause. "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court; the latter for the jury.'" Glass v. Parrish, 51 So. 2d 717, 722 (Fla. 1951) (citation omitted). "Where the facts are in dispute, the issue must be submitted to the jury. [ ] But the legal effect of the facts, when found or admitted to be true, is for the court to decide as a question of law." Alterra Healthcare Corp. v. Campbell, 78 So. 3d 595, 602 (Fla. 2d DCA 2011)(internal quotation marks and citations omitted). Additionally, "[i]n a malicious prosecution action, the element of legal causation is established where a defendant gave information to authorities which he or she knew or should have known to be false which was the determining factor in inducing the [arresting] officer's decision. [ ] A defendant may also be held liable where he or she withholds information which could have caused the cessation of criminal proceedings against the plaintiff." Alterra Healthcare Corp., 78 So. 3d at 603 (internal quotation marks and citations omitted).

> The general rule is that if the defendant merely gives a statement to the proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer or if the officer makes an independent investigation, the defendant is not regarded as having instigated the proceeding. However, if the defendant's persuasion is the determining factor in inducing the officer's decision or if he gives information which he knew to be false and so unduly influences the authorities, then the defendant may be held liable.

Orr v. Belk Lindsey Stores, Inc., 462 So. 2d 112, 114 (Fla. 5th DCA 1985).

The allegations in this case are that all three defendants falsely told a detective that plaintiffs identified themselves as police officers; all three defendants failed to disclose that plaintiffs were wearing clothing and carrying badges identifying themselves as "surety agents"; defendant Cornell was given the opportunity to verify their credentials with local law enforcement officials; and that defendants were shown a photograph of Manso and a printout that Manso had listed their residence. (Doc. #60, ¶ 75.) It is also alleged that Cornell's angry phone call to plaintiffs was the "impetus" to pressing charges. (Id.) The Court will strike paragraph 34 from the Second Amended Complaint because such conduct is privileged. Rowe, 279 F.3d at 1282 (a witness's absolute immunity for testifying forecloses its use). The remaining allegations are sufficient to state a plausible claim at this stage of the proceedings. While the Statement of Probable Cause (Doc. #60-1) by Detective Davies may create disputed issues

of fact, it does not justify dismissal.  The motion to dismiss is denied.

**C.  Claims Against Detective Davis**

As a preliminary matter, the Court notes that the parties have both attached exhibits and affidavits to their motion and response, and attempted to submit supplemental materials.   The Court is not inclined to convert the motion to dismiss to one for summary judgment, and therefore for the most part will not consider these additional materials.   Therefore, the motion for summary judgment will be denied.

**(1)  Section 1983 Claim:  Count I**

In Count I, plaintiffs allege that Detective Davies violated 42 U.S.C. § 1983 by unlawfully arresting them in violation of the Fourth Amendment.   (Doc. #60, ¶ 36.)   The arrest is alleged to be unlawful because it was based on an arrest warrant issued without probable cause.   (<u>Id.</u>, ¶ 37.)   Defendant Davies seeks dismissal of Count I on the basis of qualified immunity (Doc. #66, pp. 5-13), while plaintiffs respond that Davies is not entitled to qualified immunity because the Second Amended Complaint establishes a violation of their clearly established Fourth Amendment rights (Doc. #75, pp. 4-11).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002)(internal quotation marks and citation omitted). The doctrine protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Id.</u>

"An official seeking qualified immunity must initially establish that he was acting within his discretionary authority. If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff." <u>McClish v. Nugent</u>, 483 F.3d 1231, 1237 (11th Cir. 2007). Plaintiffs concede that Detective Davies was acting within his discretionary authority to the extent that the authority encompassed the writing and submitting of probable cause affidavits. (Doc. #75, p. 5.) The burden therefore shifts to plaintiffs to establish (1) that the alleged facts make out a violation of a constitutional right, and (2) that the right was clearly established at the time of defendant's alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).

The Court will begin with the second prong. "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." <u>Leslie v. Hancock County Bd. of Educ.</u>, 720 F.3d 1338, 1343 (11th Cir. 2013)(internal quotation marks and citation omitted). The inquiry whether a federal right

is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Coffin v. Brandau</u>, 642 F.3d 999, 1013 (11th Cir. 2011)(quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)(per curiam)(citation omitted)). A constitutional right is clearly established if it would have been clear to a reasonable officer that the conduct was unlawful in the situation confronted. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001).

The constitutional right at issue was clearly established at the time of the events in this case. "Under the Fourth Amendment, a person has the right not to be arrested unless probable cause justifies the arrest." <u>Motes v. Myers</u>, 810 F.2d 1055, 1059 (11th Cir. 1987)(citations omitted). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996).

Similarly, at the time of the events in this case, plaintiffs' Fourth Amendment right to be free from an arrest and detention based upon an arrest warrant in which the affidavit did not contain probable cause was clearly established, and no reasonable officer would have thought otherwise. In 1995, the Eleventh Circuit

stated: "Malley[3] and Garmon[4] clearly establish that a police officer is not protected by qualified immunity if he applies for an arrest warrant where 'a reasonably well-trained officer. . .would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'"  Pickens v. Hollowell, 59 F.3d 1203, 1207 (11th Cir. 1995).  In 1999, the Eleventh Circuit stated:

> Furthermore, the law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield Detective Powers from liability for such false statements, if such false statements were necessary to the probable cause. Malley v. Briggs, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); Whiting v. Traylor, 85 F.3d 581, 585 n.5 (11th Cir. 1996); Kelly v. Curtis, 21 F.3d 1544 (11th Cir. 1994) (following Malley and holding police officer not entitled to qualified immunity in § 1983 claim based on officer's false statements in 1989 affidavit submitted to magistrate judge for arrest warrant at warrant hearing); United States v. Martin, 615 F.2d 318, 327-29 (5th Cir. 1980) (applying rule regarding false statements in a search warrant in Franks v. Delaware, 438 U.S. 154, 156, 165-71, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), to perjurious statements used to obtain an arrest warrant).

Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999).  The Second Amended Complaint satisfies the "clearly established" prong.

The second issue in this case is whether the facts plaintiffs have alleged in the Second Amended Complaint make out a violation

---

[3]Malley v. Briggs, 475 U.S. 335, 345 (1986).

[4]Garmon v. Lumpkin County, Ga., 878 F.2d 1406, 1410 (11th Cir. 1989).

of this constitutional right, i.e., that Detective Davies caused the issuance of an arrest warrant pursuant to an affidavit which did not establish probable cause to arrest plaintiffs.

> Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. [ ] This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. [ ] [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and even seemingly innocent activity can provide the basis for probable cause.

Myers v. Bowman, 713 F.3d 1319, 1326 (11th Cir. 2013)(internal citations and quotations marks omitted).

Count I of the Second Amended Complaint alleges that the arrest warrant affidavit did not set forth any basis for probable cause, and attaches the Statement of Probable Cause/Narrative in the Warrant Affidavit (Doc. #60-1). This affidavit states in its entirety:

> On May 5, 2009 at approximately 0200 hours the defendant(s), white male James White, date of birth: 10/01/1964 and Hispanic male Idalberto Infante, date of birth: 02/09//1967, along with three other males came to 4455 Pioneer 21st Street Clewiston, Florida, a fenced property secured with a locked gate, and pounded on the doors and windows of the residence and loudly shouted "Police" identifying themselves as police officers and demanding entrance into the residence otherwise the door would be "broken down." At the time the residence was occupied by Rene Jesus Garcia, his wife Sheila Cornell, their sons Lazaro Lara (14 years of age), Rene Garcia (20 years of age), and Christopher Garcia (9 years of age). Also present was 88 year old Blanca Cornell and 67 year old Ophelia Gutierrez.

20-year-old Rene Garcia heard pounding on his window and looked outside to see a man he later identified as Infante holding a black pistol and flashlight pointing them in the window at the younger Garcia. The younger Garcia fled to his parent's room and the family went into the living room. The elder Garcia also saw persons pointing guns at him through the laundry room window. The family verbally verified that the persons outside their residence were identifying themselves as police officers so the family, as per the verbal direction they received from what they believed to be legitimate law enforcement officers, opened their door and exited the residence. White and Infante, along with an unknown tall male, entered the residence and began to search. White and Infante were armed with pistols, which were held in their hands, and the tall male was carrying what is described as an assault rifle with a "banana" style clip. All three men wore black "tactical" vests or other devises identifying themselves as "agents". All family members had firearms pointed at them at different times during this encounter.

When the search was comp[l]ete, White explained they were looking for a Hispanic male named "Jorge Manso" and that the group of men were in fact working as Bond agents. White showed Sheila Cornell a document with a photograph of an Hispanic male and a business card showing a star/eagle emblem identifying "Agent James White" as a bond agent under license # A311682. White and Infante explained that the family could be arrested if Manso was found in their residence or on their property. Furthermore, White and Infante stated that they would return at a later time and things would be "worse."

After daylight, Cornell and Garcia discovered that their gate lock had been cut and the gate itself removed. They also discovered damage to shed doors, trailer skirting and other locks that had been cut off of shed doors on their property. This apparently occurred prior to the knocking on the doors and windows. Cornell estimated this damage to be approximately $500,00 to repair.

It was later learned that Idalberto Infante, representing Coast-to-Coast Bail Bonds, had bonded Jorge Manso out of the Miami-Dade County Jail on December 13, 2008 on a bond of $250,000.00. Jorge Manso's address, as

per the bond paperwork, is 590 W. 39th Street Hialeah, Florida.

Matthew Guy, Special Investigator for Florida Department of Financial Services, Division of Agent and Agency Services, Bureau of Investigations informed me that Idalberto Infante does not appear as a licensed bondman, but that James White was a licensed bondsman for Coast-to-Coast Bail Bonds and that his appointment had been revoked several weeks prior to the events of May 5, 2009 and, as such, was not empowered to act in that capacity.

On June 4, 2009 at approximately 0900 hours I met with Cornell and her family at the Hendry County sub-station in Clewiston. I showed separate prepared 6-picture photographic line-ups of Idalberto Infante and James White to Rene Jesus Garcia, his wife Sheila cornell and their sons Lazaro Lara and Rene Garcia. Lara could not identify anyone in the photographic line-ups. The elder and junior Garcia was able to positively identify Idalberto Infante. Sheila Cornell was able to positively identify both Infante and James White as being armed and present at the incident in question.

The Probable Cause in support of these allegations are the sworn statements of Rene Jesus Garcia, his wife Sheila Cornell, and their sons Lazaro Lara and Rene Garcia.

(Doc. #60-1.) The sworn statements were not attached to the Second Amended Complaint, but were filed by defendant Davies. (Doc. #66-3.) Because it is not clear that the sworn statements had been attached to the affidavits submitted to the state court judge in connection with the arrest warrant, the Court will not consider the contents of the sworn statements.

Count I asserts that the arrest warrant was based upon several false statements by Detective Davies in the Statement of Probable Cause affidavit. The Court addresses each.

-32-

First, plaintiffs assert that the statements by Mr. Garcia and Ms. Cornell to Detective Davies that plaintiffs identified themselves as police officers were false because plaintiffs always had identified themselves as surety agents. Even assuming plaintiffs' version of the facts is the correct one, the Second Amended Complaint fails to allege that Detective Davies knew or should have known these statements by the victims were false. "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998). An officer is also generally allowed to rely upon a reliable informant, Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009); Ortego, 85 F.3d at 1525, and information from government officials, Myers, 713 F.3d at 1327. Additionally, obtaining contradictory statements from plaintiffs or their witnesses would not necessarily undermine probable cause. "While Dahl's exculpatory statements tended to discredit McCardle's version of events, arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002). See also Marx v. Gumbinner, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990)(the court did not have to determine whether uncorroborated statements constituted probable cause when there was

other incriminating evidence). "An officer is not required . . .
to resolve all inferences and all factual conflicts in favor of the
suspect." Bailey v. Bd. of County Comm'rs of Alachua County, Fla.,
956 F.2d 1112, 1120 n.5 (11th Cir. 1992). Detective Davies
properly relied upon the statements of the victims and properly
included them in the probable cause affidavit.

Second, Count I asserts that Detective Davies falsely stated
in his affidavit that plaintiff White was a convicted felon in the
INIC database. (Doc. #60, ¶32.) The Second Amended Complaint
attaches only the Statement of Probable Cause affidavit as to
plaintiff Infante (Doc. #60-1), which includes no such allegation
by Detective Davies. While plaintiffs repeat the allegation in
their Response, they still provide no factual support for it.
There is no record evidence that Detective Davies included false
information about White's status as a convicted felon in the arrest
warrant affidavit.

Third, Count I asserts that the Statement of Probable Cause
falsely stated plaintiffs were unlicensed surety agents, when
Detective Davies was told by the State of Florida that plaintiffs
were fully and lawfully licensed. (Doc. #60, ¶32.) The Statement
of Probable Cause states that Detective Davies was told by a
specifically identified Special Investigator for the Florida
Department of Financial Services, Division of Agent and Agency
Services, Bureau of Investigations that Infante "does not appear as

a licensed bondman" and that White "was a license bondsman for Coast-to-Coast Bail Bonds and that his appointment had been revoked several weeks prior to the events of May 5, 2009 and, as such, was not empowered to act in that capacity." (Doc. #60-1.) At this stage of the proceedings the court must credit the specific allegation in the Second Amended Complaint that Detective Davies was told by the State of Florida that plaintiffs were fully and lawfully licensed. Therefore, in determining probable cause this statement will be redacted from the arrest warrant affidavit.

Fourth, Count I alleges that Detective Davies "contrived witness testimony from Mr. Garcia, Ms. Cornell, and Mr. Garcia Jr., in his affidavit." (Doc. #60, ¶32.) While the connotations of "contrived" are not good, there are no facts supporting the allegation to give it meaning. No weight can be attached to this conclusory allegation.

Finally, Count I alleges that a proper investigation would have revealed plaintiffs were licensed surety agents, were lawfully on the property, and were lawfully conducting a search of the premises for their fugitive. (Doc. #60, ¶32.) It seems clear that a further investigation could have obtained information supporting plaintiffs' position, but would not have refuted eyewitness testimony as to the events at the residence. Nothing precluded a reasonable officer from believing the testimony of the victims, and

finding probable cause to believe plaintiffs committed one or more of the offenses charged.

Because the lack of probable cause is a necessary element of the § 1983 claim, and the existence of probable cause is established in the Second Amended Complaint, Detective Davies is entitled to qualified immunity as to Count I. While only "arguable probable cause" is necessary in the Eleventh Circuit, the Court need not resolve plaintiffs' argument that there is no functional difference. <u>Contra</u> <u>Petithomme v. County of Miami-Dade</u>, 511 F. App'x 966, 969-70 (11th Cir. 2013)(defining probable cause and arguable probable cause differently).

**(2) State Claim: Count IV**

Count IV alleges a state law claim of false imprisonment against Detective Davies based upon plaintiffs' arrest and detention based upon an arrest warrant that lacked probable cause. Plaintiffs allege that the arrest and detainment was unreasonable and unwarranted based on their broad statutory and common law rights as surety agents and the lack of probable cause in the warrant. (Doc. #60, ¶¶ 59-62.)

False arrest is the unlawful restrain of a person against their will, and a plaintiff is only required to establish imprisonment against his will and the unlawfulness of the detention. <u>Johnson v. City of Pompano Beach</u>, 406 So. 2d 1257, 1259 (Fla. 4th DCA 1981). The absence of probable cause is an

affirmative defense to be proven by defendant, <u>Willingham v. City of Orlando</u>, 929 So. 2d 43, 48 (Fla. 5th DCA 2006), and the existence of probable cause will defeat a civil cause of action for false arrest, <u>see, e.g.</u>, <u>Brown v. Dillard's Inc.</u>, 170 F. App'x 99, 100 (11th Cir. 2006); <u>Rankin v. Evans</u>, 133 F.3d 1425, 1436 (11th Cir. 1998); <u>Weissman v. K-Mart Corp.</u>, 396 So. 2d 1164, 1167 (Fla. 3d DCA 1981).

The Court has determined that Detective Davies met the burden of establishing that probable cause was present at the time of arrest. Plaintiffs were at most each a "bail bond agent" as defined by Florida statute, which includes a "limited surety agent" and a "professional bail bond agent", but not a "surety agent." Fla. Stat. § 648.25(2). The lawful powers of a bail bond agent do not include impersonating a police officer, and indeed a bail bond agent cannot even represent himself to be "a bail enforcement agent, bounty hunter, or other similar title in this state." Fla. Stat. § 648.30(2). As no action was taken outside the scope of his employment or function, Fla. Stat. § 762.28(9)(a), the Court finds that Detective Davies is entitled to qualified immunity as to Count IV.

**(3) State Claim: Count V**

Count V alleges that Detective Davies was the legal cause of the criminal proceeding against plaintiffs when he used an affidavit containing information he knew to be false to obtain an

arrest warrant, and the criminal proceeding was commenced and continued based on a fabricated affidavit lacking probable cause. Detective Davies falsely stated that plaintiffs were unlicensed agents when expressly told by the State of Florida that plaintiffs were fully and unlawfully licensed, and he contrived witness testimony. (Doc. #60, ¶¶ 65-67.) Plaintiffs allege that Detective Davies acted maliciously because of the complete lack of probable cause for the arrest, and plaintiffs were maliciously prosecuted based on a warrant without probable cause. (Id., ¶ 68.)

As previously stated, a claim for malicious prosecution requires plaintiffs to plead and prove all six elements of the claim. (See supra, p. 17.) Detective Davies argues that probable cause is established by the affidavit, and legal malice cannot be proven.

### (i) Probable Cause

In a malicious prosecution case, plaintiff bears the burden of proving a lack of probable cause as an actual element of the cause of action. Rotte v. City of Jacksonville, 509 So. 2d 1252, 1253 (Fla. 1st DCA 1987). "Malice may be implied or inferred from want of probable cause but want of probable cause cannot be inferred from malice." Duval Jewelry Co. v. Smith, 102 Fla. 717, 720, 136 So. 878, 880 (1931). The Court found that probable cause was present at the time of arrest, and therefore plaintiffs cannot meet at least one element of the malicious prosecution case.

**(ii) Malice**

There are two kinds of malice that may be shown:  (1) "actual malice" or "subjective malice" or "malice in fact" resulting in an intentional wrong, and (2) "legal malice", "which may be inferred from circumstances such as the want of probable cause, even though no actual malevolence or corrupt design is shown."  <u>Wilson v. O'Neal</u>, 118 So. 2d 101, 105 (Fla. 1st DCA 1960)(citation omitted). The Court has found that probable cause existed at the time of arrest, therefore no legal malice may be inferred or can be shown. As plaintiffs cannot meet the lesser burden of showing legal malice, <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1357 (Fla. 1994)("it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient. . . ."), the Court finds that plaintiffs have failed to show the element of malice was present.

As plaintiffs must establish <u>all</u> six elements of the claim, <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1355 (Fla. 1994), and have failed to do so, the Court finds that Detective Davies is entitled to qualified immunity as to Count V.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  Defendants Rene Garcia, Sheila Cornell, and Rene Garcia Jr.'s Motion to Dismiss (Doc. #63) is **DENIED** and paragraph 34 of the Second Amended Complaint is **stricken.**

2. Defendant Sheriff Steve Whidden's Motion to Dismiss or in the Alternative Motion for a More Definite Statement (Doc. #65) is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) Count II is **DISMISSED without prejudice** for failure to state a claim.

(b) Count III is **DISMISSED with prejudice** for failure to provide timely notice to the Florida Department of Financial Services.

(c) Count IV is **DISMISSED with prejudice** for failure to provide timely notice to the Florida Department of Financial Services.

(d) Count V is **DISMISSED with prejudice** as barred by Florida's sovereign immunity.

(e) The reference to "jointly and severally" on page one of the Second Amended Complaint is **stricken.**

3. Defendant Detective Allen Davies's Motion to Dismiss Second Amended Complaint, or, in the Alternative, Dispositive Motion for Summary Judgment (Doc. #66) is **GRANTED** to the extent that all counts are **DISMISSED WITH PREJUDICE** because he is entitled to qualified immunity, and is otherwise **DENIED.**

4. Defendant Detective Allen Davies's Motion to Strike All or Part of Plaintiffs' Improper Exhibits in Opposition to Det. Davies's Dispositive Motion for Summary Judgment (Doc. #76) is **DENIED** as moot.

5.  Plaintiffs' Opposed Motion for Leave to Supplement Record in Response (Doc. #92) is **DENIED** as moot.

6.  Defendants Sheriff Steve Whidden and Detective Allen Davies's Motion to Supplement Pending Dispositive Motions and Responses (Doc. #93) is **DENIED** as moot.

7.  Plaintiffs may file a Third Amended Complaint, consistent with the dismissals with prejudice, within **fourteen (14) days** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___30th___ day of September, 2013.


JOHN E. STEELE
United States District Judge


Copies:
Counsel of record